UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
PATRICIA F. MARTINEZ,
    Debtor.                        No. 13-11-13873 SL

YARYAN-PARKS TRUST,
    Plaintiff,
v.                               Adv. No. 11-1163 S

PATRICIA F. MARTINEZ,
    Defendant.

**MEMORANDUM OPINION ON CROSS MOTIONS
FOR SUMMARY JUDGMENT**

This matter is before the Court on cross motions for summary judgment. Plaintiff is represented by its attorney Holt Mynatt Martinez, P.C. (David McNeill, Jr.). Defendant ("Defendant" or "Debtor") is represented by her attorney Ronald E. Holmes. The issue presented in this adversary proceeding is whether the Debtor retained a sufficient interest in a mobile home at the commencement of her bankruptcy case such that she can cure the associated defaulted debt[1]. For the reasons set forth below the Court finds that Debtor does have a sufficient interest in the mobile home.

**BACKGROUND**

The facts are, generally, not in dispute. In November, 2009, Defendant executed a Retail Installment Contract and

---

[1]The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K) and/or (L); and this Memorandum Opinion constitutes findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

Security Agreement ("Contract") in which she granted McCarson
(Plaintiff's predecessor in interest) a security interest in a
1997 Golden West mobile home.  The Contract had a purchase price
of $40,000.  The Contract called for $10,000 as a down payment
and payment of the $30,000 balance through one hundred forty four
monthly payments of $450.26 with interest at an annual percentage
rate of 15%, plus a monthly payment of taxes and insurance of
$50.00 and an escrow fee of $4.29 (total payment of $504.55).  A
New Mexico Certificate of Title issued for the mobile home on
December 1, 2009, lists the registered owners as Patricia F.
Martinez or Rudy Abel Avalos, and the lienholders as James C.
Parks and Charles E. Yaryan.  Defendant failed to make payments
and on November 22, 2010 the Plaintiff gave Defendant a notice of
default.  On December 15, 2010 Defendant filed a Chapter 7
bankruptcy in the District of New Mexico as case number 7-10-
16169-SL.  She listed the mobile home on her Schedule B with a
value of $40,000 and listed an associated debt to Mountain States
Escrow for $25,000.  She claimed the $15,000 of equity as an
exempt homestead.  No objections were filed to her exemptions.
On February 10, 2011, Plaintiff filed a motion for relief from
the automatic stay regarding the mobile home.  Defendant timely
filed an objection to the motion.  Before any hearing on the stay
motion, debtor was discharged on April 4, 2011.  On April 15,
2011 the Court granted the stay motion, finding that Debtor had

received her discharge, which terminated the automatic stay as to her, and that the case trustee had not responded to the stay motion, so the stay was terminated as to the estate. The bankruptcy case closed on April 18, 2011.

On June 13, 2011, Plaintiff filed a complaint in the Third Judicial District Court to recover possession of the mobile home and a Motion for Advance Payment of Rent. Plaintiff served Defendant by serving her son by hand on June 15, 2011 and mailed a copy of the summons and complaint to her state court attorney. On July 18, 2011, Plaintiff filed an affidavit of non-military service. On July 19, 2011, Plaintiff obtained a certificate of the state of the record that Defendant had not appeared. On July 20, 2011 Plaintiff filed an application for default judgment and writ of replevin. On July 27, 2011 Defendant, representing herself, filed a response to the complaint and on August 5, 2011 attorney Carlos Quinonez filed an amended response on her behalf. On August 10, 2011, Judge Arrieta of the Third Judicial District Court entered a Default Judgment and Order Issuing Writ of Replevin. This document provides:

1.  The Court has jurisdiction over the parties and the subject matter of this cause of action.
2.  On November 20, 2009, Defendant executed a Retail Installment Contract and Security Agreement (the Contract) with Ron McCarson, under which Defendant agreed to purchase a 1997 Golden West mobile home, Model 7884, VIN GWCA21124231AB (the Mobile Home).
3.  The Mobile Home is situated upon real property located at 191 Mohican, Las Cruces, New Mexico, which is not owned by Plaintiff or Defendant.

Page -3-

4. The Contract was transferred and assigned by Ron McCarsen to Plaintiff Yaryan-Parks Trust.
5. Plaintiff is therefore the lawful owner and holder of the Contract.
6. The Contract requires Defendant to pay to Plaintiff the sum of $504.55 each month beginning on January 5, 2010, and continuing on the first day of each month thereafter until fully paid. Defendant has not made any of the payments on the contract beginning with the payment due on September 5, 2010.
7. Defendant agreed, as part of the Contract, that by giving Plaintiff a security interest in the Mobile Home, she waived all rights provided by law to claim it exempt from legal process.
8. The Contract provides that upon the happening of any event of default, Plaintiff may take immediate possession of the Mobile Home.
9. Plaintiff gave Defendant notice of default on November 22, 2010.
10. Defendant has ignored and refused all demands for the return of the Mobile Home, despite having had reasonable opportunity to comply therewith.
11. Plaintiff has the right to immediate possession of the Mobile Home.
12. Plaintiff waived seizure and delivery of the Mobile Home prior to trial.
13. No affidavit or replevin bond is required for this action. NMSA 1978, § 42-8-7.
14. The value of the property is at least $30,000.00.
15. Plaintiff elects return of the Mobile Home plus damages incurred by virtue of Defendant's default.
16. The Security Agreement should be foreclosed.
17. The Contract provides that in the event of a default, Plaintiff has the right to retain all money paid on the Contract.
18. In the event Defendant has damaged the Mobile Home in any way, Plaintiff is entitled to reasonable and necessary costs of repair.
19. Defendant should be restrained from damaging the mobile home or its contents and from removing any property from the mobile home that does not belong to her.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that a Writ of Replevin shall forthwith issue from this Court against Defendant, for immediate return of the possession of the mobile home which is the subject of this cause of action to Plaintiff. Plaintiff is also

awarded the sum of $504.55 per month or $16.81 per diem
from July 5, 2011 until Defendant is removed from the
property, as payment for rent.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that
Plaintiffs security interest in the mobile home is
foreclosed, and Defendant shall have no further right
of possession or other legal or equitable right to or
in the mobile home.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that
Defendant is restrained from damaging the mobile home
or its contents in any way and she is further
restrained from removing from the mobile home any
appliance or other items which are property of
Plaintiff or attached to the mobile home.  Any
violation of this Order may be punished as contempt of
Court.

The docket entry corresponding to this document, dated

August 10, 2011 states:

Default Judgment and Order Issuing Writ of Replevin –
Writ of Replevin shall issue from this Court against
Deft for immediate return of possession of the mobile
home.  Plntf is also awarded the sum of $504.55/mon or
16.81/diem from 07/05011 until Deft is removed from
Property as payment for rent.
- Plntf'S security interest in the mobile home is
foreclosed, and Deft shall have no further right to or
in the mobile home.
- Deft is restrained from damaging the mobile home or
its contents in any way and she is further restrained
from removing from the mobile home any appliance or
other items which are property of plntf or attached to
the mobile home.  Any violation of this order may be
punished as contempt of court.

The next entry on the docket is dated August 15, 2011 and

states:

ALIAS/WRlT ISSUED
WRIT OF REPLEVIN - ISSUED
TO: SHERIFF OF DONA ANA COUNTY
COMMANDED TO TAKE FROM DEFT THE 1997 GOLDE WEST MOBILE
HOM, VIN .. .4231AB
TO REMOVE DEFT FROM THE PROPERTY, CONFISCATE FROM HER
ALL KEYS OR OTHER MEANS OF ACCESS TO THE MOBILE HOME

Page -5-

AND SERVE UPON HER A COPY OF THIS WRIT OF REPLEVIN
TO TURN OVER THE PROPERTY TO PLTF UPON PAYMENT OF YOUR
FEES AND TO MAKE A FULL RETURN OF YOUR ACTIONS TAKEN
ON THIS WRIT ON OR BEFORE 4PM O8/30/2011
TO: DEFENDANT PATRICIA F MARTINEZ –
COMMANDED UPON SEIZURE OF THE MOBILE HOME BY THE
SHERIFF OF DONA ANA COUNTY, TO DEPART [T]HE MOBILE HOME
AND NEITHER EMTER (sic) IT OR THE PROPERTY UPON WHICH
IT IS SITUATED UNLESS AUTHORIZED BY THIS COURT, IN A
WRITTEN ORDER, TO DO SO.

On August 29, 2011, Defendant filed a voluntary petition under Chapter 13 in the District of New Mexico Bankruptcy Court. On August 29, 2011, her bankruptcy attorney filed a Notice of Bankruptcy in the Third Judicial District case. On August 30, 2011 her state court attorney Carlos Quinonez filed a second notice of bankruptcy in the Third Judicial District case.

Page 2 of Defendant's Chapter 13 petition discloses her previous Chapter 7 case. Her Schedule B lists the Golden West Mobile Home as an asset with a $20,000 value, subject to a $29,000 lien held by the Plaintiff. Schedule D lists the Plaintiff as a secured creditor for the mobile home. Schedule G also lists Plaintiff as a party to a "REC"[2].

_____

[2]Although not necessary or relevant for this decision, the Court notes that, in general, installment sale contracts for items of personal property are not executory contracts. See Johnson v. Smith (In re Johnson), 501 F.3d 1163, 1174 (10th Cir. 2007)(collecting cases); Schnittjer v. Burke Construction Co. (In re Drahn), 405 B.R. 470, 475 (Bankr. N.D. Iowa 2009)("Contracts for the sale of personal property are not executory when the only remaining duty is the transfer of title after the debtor has completed payments.")(Mobile home case.) However, even if the contract had been executory, it was no longer executory after the Debtor breached and the seller obtained a judgment prior to the
(continued...)

Case 11-01163-s    Doc 17    Filed 07/30/12    Entered 07/30/12 09:57:30 Page 6 of 38

Defendant also filed her Chapter 13 plan on August 29, 2011. The plan is the standard New Mexico form plan with no additions. It proposes that she will pay $650 per month for sixty months starting on September 15, 2011. Plan ¶ 4.4 item (3) states the treatment of Plaintiff's claim: the mobile home, value $20,000, is collateral for an estimated claim of $29,000; the claim will be bifurcated and the secured portion will be paid with interest at 4% and the unsecured portion will share pro-rata with other unsecured claims. The plan, ¶ 5, also lists Plaintiff as a party to a "REC" which is to be assumed[3].

On September 2, 2011, Plaintiff filed a Motion in the bankruptcy case seeking a declaration that the mobile home is not property of the bankruptcy estate. Doc 13. The ground asserted for the motion was the default judgment that declared Defendant had no further interest in the mobile home. Defendant responded, arguing that the default judgment had no such effect because the writ of replevin had not been executed before her bankruptcy and that she had both possession and legal title. Doc 28. Defendant also pointed out that this issue could only be addressed by adversary proceeding. The Court summarily denied the motion on

---

[2](...continued)
bankruptcy filing. In re Becker, 217 B.R. 231, 234 (Bankr. M.D. Tenn. 1998).

[3]See note 2, above.

the grounds that declaratory relief can only be obtained by adversary proceeding.  Doc 29.

On September 8, 2011, Defendant filed a Motion to Assume the executory contract with Plaintiff.  Doc 14.  Plaintiff objected on the grounds that the state court judgment terminated the contract.  Doc 27.

On September 8, 2011, Defendant also filed a Motion for Valuation of the Mobile Home seeking to establish its value at $20,000.  Doc 16.  Plaintiff objected to the valuation for several reasons: 1) Defendant is no longer the owner, 2) as non-owner she is not competent to testify to its value, 3) the valuation is not based on any evidence, and 4) the Court lacks jurisdiction to determine the value of non-estate property.  Doc 26.

On October 11, 2011 Plaintiff filed this adversary proceeding.  The Complaint is entitled "Complaint to Declare Personal Property Outside the Bankruptcy Estate and Objecting to Discharge."  It argues that based upon the default judgment, the mobile home is not part of the estate.  It alleges nothing about discharge or dischargeability and seeks no relief relating to discharge.

Defendant answered timely and asserted various affirmative defenses, including the fact that the mobile home ownership

remained in her name, she resided in it and the writ of replevin was unexecuted when she filed her Chapter 13. Doc 5.

Plaintiff filed a Motion for Summary Judgment (doc 6) and a Memorandum in Support (doc 7). Plaintiff makes two arguments. First, it claims that the default judgment extinguished all rights Defendant had in the mobile home[4]. Second, it claims that collateral estoppel[5] precludes Defendant from relitigating her interests in the mobile home.

Defendant responded to the Motion for Summary Judgment (doc 11) and filed her own motion for summary judgment (doc 12) with affidavit attached. Defendant makes three arguments. First, she correctly claims that default judgments do not have preclusive effect under New Mexico law. See, e.g., Blea v. Sandoval, 107 N.M. 554, 558, 761 P.2d 432, 436 (Ct.App.), cert. denied, 107 N.M. 413, 759 P.2d 200 (1988). Second, she claims that section

---

[4]Plaintiff's arguments about Defendant's failure to follow New Mexico rules regarding initiating a reconsideration or appeal are not relevant. The record contains a default judgment and that is what this Court considers.

[5]Under New Mexico law,
In order to invoke collateral estoppel a party must establish the existence of four elements: (1) the parties are the same or in privity with the parties in the original action; (2) the subject matter or cause of action in the two suits are different; (3) the ultimate facts or issues were actually litigated; and (4) the issue was necessarily determined.
Reeves v. Wimberly, 107 N.M. 231, 233, 755 P.2d 75, 77 (Ct.App. 1988)(Citations omitted.)

Case 11-01163-s   Doc 17   Filed 07/30/12   Entered 07/30/12 09:57:30 Page 9 of 38

541 and 542[6] define property of the estate and that the mobile
home, in its current status, fits within those definitions.
Finally, she argues that the automatic stay prevents Plaintiff
from further perfection of any interest in or any attempt to
obtain physical repossession of the mobile home; therefore, she
has the opportunity to cure any defaults.

Plaintiff's reply contains four arguments.  First, that the
Tenth Circuit has an exception to the rule that default judgments
have no preclusive effect: when a defendant has "actually
litigated" in the case that ends up with a default judgment, it
will have preclusive effect.  <u>E.g.</u>, <u>Melnor, Inc. v. Corey (In re
Corey)</u>, 583 F.3d 1249, 1251 (10th Cir. 2009), <u>cert. denied</u>, 130
S.Ct. 1739 (2010).  The Court is aware of the Tenth Circuit's
application of that exception.  The Court is unaware, however, of
whether New Mexico state cases use it[7].  However, even if it

_____

[6]Debtor was still in possession of the Mobile home when she
filed bankruptcy.  Therefore section 542, dealing with turnover
of property in another's possession is not relevant in this case.

[7]    Our courts have specifically recognized that
       the elements of collateral estoppel we apply
       may differ from the elements considered by
       federal courts, <u>see</u> <u>Edwards v. First Fed.
       Sav. & Loan Ass'n of Clovis</u>, 102 N.M. 396,
       401-02, 696 P.2d 484, 489-90 (Ct.App. 1985)
       (discussing differences between elements of
       collateral estoppel in New Mexico courts and
       federal courts), and we are required to
       adhere to elements established by the New
       Mexico Supreme Court.  <u>Id.</u>
<u>In re Estate of Duran</u>, 2007-NMCA-068, ¶ 21, 141 N.M. 793, 799-
                                              (continued...)

Case 11-01163-s   Doc 17   Filed 07/30/12   Entered 07/30/12 09:57:30 Page 10 of 38

would apply in New Mexico state courts, the Court finds that the exception would not be applicable[8] in this case. Finally, the "causes of action" are completely different. The state court cause of action was to regain title and possession to the mobile home; the bankruptcy cause of action is whether Debtor retained rights at the point she filed bankruptcy.

---

[7](...continued)
800, 161 P.3d 290, 296-97 (Ct.App. 2007).

[8]This Court has seen this exception applied only in cases as a sanction. See, e.g., Corey, 583 F.3d at 1251 ("Mr. Corey actually litigated Melnor's fraud claim. The default was not entered because of Mr. Corey's failure to contest the issue but rather because his efforts in contesting it were abusive.")
In the state case proceedings involved in this case the docket shows no participation at all by the Defendant before the Motion for Default Judgment was filed. See doc 7, page 2 of 3. The resulting default could not then have been a result of any actual participation by the Defendant.
Plaintiff also argues that there were earlier state court lawsuits in which Defendant did participate, and asks this Court to consider her participation in the series of cases. First, the Court does not have any details of those other cases. Second, it does not change the fact that in the latest case she did not participate.
Plaintiff also attempts to attribute allegedly sanctionable conduct by her state court attorney to her. See doc 15, pp. 6-8. Plaintiff claims that the attorney falsely informed the state court that Defendant had already filed for Chapter 13 protection. But, whatever the attorney told the court, it did not stop the court from entering a default judgment five days later. It appears therefore that the misrepresentation caused Plaintiff no harm. Furthermore, if an attorney misrepresented facts to another court, it is not within this Court's jurisdiction to deal with it.

Plaintiff's second reply is that the default judgment has res judicata[9] effect in this case.  The Court disagrees[10].  The question for the state court was whether Plaintiff had a right of replevin of the mobile home or whether the security interest should be foreclosed.  The question for the Bankruptcy Court is, given the ruling of the state court judge, whether there was still a sufficient legal or equitable interest in the Debtor such that the Bankruptcy Code would allow a cure.  This bankruptcy issue was not an issue that was or could have been determined in

---

[9]In <u>Brooks Trucking Co., Inc. v. Bull Rogers, Inc.</u>, 2006-NMCA-025, ¶ 10, 139 N.M. 99, 102, 128 P.3d 1076, 1079 (Ct.App. 2006) the New Mexico Court of Appeals listed the elements of res judicata:

> The elements of res judicata or claim preclusion required as to the two actions at issue are (1) the same parties or parties in privity, (2) the identity of capacity or character of persons for or against whom the claim is made, (3) the same subject matter, and (4) the same cause of action.  <u>Moffat [v. Branch]</u>, 2005-NMCA-103, ¶ 11, 138 N.M. 224, 118 P.3d 732; <u>Anaya v. City of Albuquerque</u>, 1996-NMCA-092, ¶ 6, 122 N.M. 326, 924 P.2d 735. In regard to the subject matter and cause of action, res judicata "does not depend upon whether the claims arising out of the same transaction were actually asserted in the original action, as long as they could have been asserted." <u>Id.</u> ¶ 18 (internal quotation marks and citation omitted).

[10]Similarly, the Court finds that the Rooker-Feldman doctrine would not apply.  That doctrine, generally, prohibits a losing party from seeking an appellate review of a state court judgment in federal court. <u>Kiowa Indian Tribe of Oklahoma v. Hoover</u>, 150 F.3d 1163, 1169 (10th Cir. 1998).  Debtor is not attempting to set aside the state court judgment.  Rather, she is attempting to exercise her rights under Bankruptcy Code section 1322. <u>See</u> <u>Woodsbey v. Easy Mortgage (In re Woodsbey)</u>, 375 B.R. 145, 148 (Bankr. W.D. Pa. 2007)(Rooker-Feldman doctrine does not apply before sale of property.)

Page -12-

the state court case; no bankruptcy had in fact been filed so no bankruptcy defense could have been asserted.

Third, Plaintiff argues that the mobile home is not included in the bankruptcy estate because Debtor had no "legal or equitable" interest. The Court disagrees for the reasons set forth in detail below.

Fourth, Plaintiff argues that Defendant's status is that of a trespasser and she cannot be construed as having a possessory interest in the mobile home. The Court disagrees. First, trespass is an action for injury to right of possession of real property. <u>Pacheco v. Martinez</u>, 97 N.M. 37, 41, 636 P.2d 308, 312 (Ct.App. 1981). Neither party owns the real estate in this case. Second, trespass involves entry onto another's property without permission. <u>State v. Tower</u>, 133 N.M. 32, 34, 59 P.3d 1264, 1266 (Ct.App.), <u>cert. denied</u>, 133 N.M. 30, 59 P.3d 1262 (2002). Debtor entered the Mobile home with permission; she purchased it as her residence. And, as to her continuing occupation, the automatic stay of her bankruptcy prevented the writ of replevin from having effect. The automatic stay has not been terminated and her possession is lawful.

**<u>DISCUSSION</u>**

The concept of a consumer bankruptcy through which a debtor could retain certain assets was introduced in the 1938 Chandler Act, 52 Stat. 840 (1938)(repealed 1978). Whelan, Cohen and

Wexler, Consumer Bankruptcy Reform: Balancing the Equities in Chapter 13, 2 Am. Bankr. Inst. L. Rev. 165, 166 (1994)(Hereafter "Balancing Equities").  The Bankruptcy Reform Act of 1978 repealed the Chandler Act but maintained the same underlying philosophy that allowed debtors an opportunity to keep some or all of their possessions.  Id.

Before 1993, bankruptcy courts were split on the issue of when or whether a debtor could cure a default on an obligation secured by real property.  Id. at 178.  The majority of circuits followed the Second Circuit case of DiPierro v. Taddeo (In re Taddeo), 685 F.2d 24 (2nd Cir. 1982).  This case held that a debtor could de-accelerate an accelerated mortgage, reinstate the original mortgage and cure defaults even if there were a prepetition state court judgment for the accelerated balance.  Id. at 178-79 (citing Taddeo, 685 F.2d at 28).

Page -14-

In 1993 Congress codified[11] the result in Taddeo and adopted it as part of the 1994 Code amendments.  Id. at 179.  The specific language of the amendments (and the legislative history) suggest that a debtor can cure a real estate mortgage default until a state law specifically terminates the debtor's interest in the property.[12]  Id.

---

[11]See Sen.Rep. No. 168, 103d Cong., 1st Sess. 21. ("Period for curing default relating to principal residence.")(October 28, 1993).  Section 301 added a new subsection (c) to § 1322, which addresses the contents of a debt adjustment plan.  The new section clarified and affirmed the ruling in Taddeo, and provided:

> (c) Notwithstanding State law and subsection (b)(2), and whether or not a claim is matured or reduced to judgment, a debtor who at the time of filing a petition under this title possesses any legal or equitable interest, including a right of redemption, in real property securing a claim —
> (i) may cure the default and maintain payments on the claim pursuant to subsection (b)(3) or (5)[.]

Id.  The language "[n]otwithstanding State law" along with the specific reference to §§ 1322(b)(3) and (5), make clear that the intent of Congress in amending § 1322 is to "clarif[y] that Federal bankruptcy rights provided in §§ 1322 and 1325 preempt any State laws in conflict with Federal law."  S.Rep. No. 168, 103d Cong., 1st Sess. 51 (1993).  In addition, the language "whether or not a claim is matured or reduced to judgment" (S. 540, § 301(c)) makes clear that "debtors should be given full opportunity to retain their homes by paying the foreclosure debts, curing the defaults, and reinstating the mortgage payments."  Id.  And that a foreclosure judgment obtained by the mortgagee, in and of itself, will not prevent a cure.  See S.Rep. No. 168, 103d Cong., 1st Sess. 51 (1993).

See also Balancing Equities, 179 at n.85.  Note: The current version of section 1322(c) appears in text on the next page.

[12]S.Rep. No. 168, 103d Cong., 1st Sess. 51 (1993).  State law may determine the nature of the property which the debtor holds on the date of filing the

(continued...)

Page  -15-

Before 2005, the Bankruptcy Code did not define "debtor's principal residence."  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), P.L. 109-8, added Bankruptcy Code section 101(13A):

> The term "debtor's principal residence"—
> (A) means a residential structure, including incidental property, without regard to whether that structure is attached to real property; and
> (B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer.

The Bankruptcy Technical Corrections Act of 2010 added the language "if used as the principal residence by the debtor" to subparts (A) and (B) of section 101(13A), resulting in a current definition of:

> The term "debtor's principal residence"--
> (A) means a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property; and
> (B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer if used as the principal residence by the debtor.

Therefore, BAPCPA made clear that mobile homes, whether attached to real property or not, deserved the protections reserved for debtor's "principal residence."

Current 11 U.S.C. § 1322(c)(1) provides:

---

[12](...continued)
petition.  However, if the debtor still possesses an interest in the land, such as a right of redemption, then the debtors may use preemptive Federal Bankruptcy rights to save their homes from foreclosure notwithstanding state law.
<u>Id.</u>

> Notwithstanding subsection [1322](b)(2) and applicable
> nonbankruptcy law--
> (1) a default with respect to, or that gave rise to, a
> lien on the <u>debtor's principal residence</u> may be cured
> under paragraph (3) or (5) of subsection (b) until such
> residence is sold at a foreclosure sale that is
> conducted in accordance with applicable nonbankruptcy
> law[.]

(Emphasis added.)  Therefore, BAPCPA extended the protection afforded to a debtor's principal residence situated on real estate to a mobile home alone that serves as a principal residence.

A debtor's property rights are determined by reference to state law.  <u>Butner v. United States</u>, 440 U.S. 48, 55 (1979).  The extent that those rights are included in a bankruptcy estate are determined, however, by federal law.  <u>Peters v. Wise (In re Wise)</u>, 346 F.3d 1239, 1242 (10th Cir. 2003)(Citing <u>N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons)</u>, 772 F.2d 462, 466 (8th Cir. 1985)).  We start by examining this Debtor's remaining rights in the mobile home under New Mexico law.  New Mexico has two parallel methods to enforce

Case 11-01163-s   Doc 17   Filed 07/30/12   Entered 07/30/12 09:57:30 Page 17 of 38

liens on personal property, the Uniform Commercial Code[13] and the
replevin statutes.

**UNIFORM COMMERCIAL CODE**

Under New Mexico law a transaction, regardless of its form,
that creates a security interest in personal property by contract
is governed by Article 9 of the Uniform Commercial Code ("UCC").
NMSA ¶ 55-9-109(a)(1). <u>See also</u> <u>Id.</u>, cmt.2. ("When a security
interest is created this Article applies regardless of the form
of the transaction or the name that parties have given to it.")
Mobile homes[14] are considered to be "goods" for purposes of the
UCC. <u>See</u> N.M. Stat. Ann. 1978 § 55-9-102(a)(44)(A)(v) ("'Goods'
means all things that are movable when a security interest

---

[13]N.M. Stat. Ann. § 55-103(b) provides:
Unless displaced by the particular provisions of the
Uniform Commercial Code, the principles of law and
equity, including the law merchant and the law relative
to capacity to contract, principal and agent, estoppel,
fraud, misrepresentation, duress, coercion, mistake,
bankruptcy and other validating or invalidating cause,
supplement its provisions.
<u>See also</u> <u>Ruidoso State Bank v. Garcia</u>, 92 N.M. 288, 290, 587 P.2d
435, 437 (1978)(The Uniform Commercial Code abolished the
doctrine of election of remedies. The statutes allow a creditor
two different causes of action, one for debt and one for mortgage
foreclosure. Recovery under one theory does not preclude later
recovery on the other.)

[14]In this case it is undisputed that the mobile home is not
attached to the real estate, which is owned by a third party.
Therefore this opinion omits references to provisions of the UCC
and cases that deal with mobile homes that have become attached
to real estate. For an overview of the different treatment
afforded to attached mobile homes, <u>see, e.g.,</u> <u>Hensley v. Ray's
Motor Co. of Forest City</u>, 158 N.C.App. 261, 264, 580 S.E.2d 721,
723-24 (N.C. Ct.App. 2003).

attaches and: (A) includes: ... (v) manufactured homes[15][.]")
And, New Mexico courts have consistently applied the UCC to
mobile home transactions.  See, e.g., Ybarra v. Modern Trailer
Sales, Inc., 94 N.M. 249, 609 P.2d 331 (1980)("The issue on
appeal is whether plaintiffs met the conditions for revocation of
acceptance of the mobile home contract as required by [the
UCC]"); Jaramillo v. Gonzales, 2002-NMCA-072, ¶ 13, 132 N.M. 459,
463-64, 50 P.3d 554, 558-59 (Ct.App.), cert. denied, 132 N.M.
288, 47 P.3d 447 (2002)(Buyers of defective mobile home could
pursue either breach of warranty or revocation of acceptance
remedies under the UCC.)  Substantially all jurisdictions realize
that the sale of a mobile home is a transaction in "goods" to
which the UCC applies.  See, e.g., Roberson v. Manning, 268 P.3d
1090, 1096 (Alaska 2012)(A mobile home is personal property and

---

[15]"The definition of 'manufactured home" borrows from the
federal Manufactured Housing Act, 42 U.S.C. §§ 5401 et seq., and
is intended to have the same meaning.  N.M. Stat. Ann. § 55-9-102
Cmt. 4.  42 U.S.C. § 5401, Historical and Statutory Notes,
Codifications, provides:
    References to "mobile homes", wherever appearing in
    text, were changed to "manufactured homes" in view of
    the amendment of Title VI of the Housing and Community
    Development Act of 1974 (this chapter) by section
    308(c)(4) of Pub.L. 96-399 requiring the substitution
    of "manufactured home" for "mobile home" wherever
    appearing in Title VI of the Housing and Community
    Development Act of 1974, and section 339B(c) of Pub.L.
    97-35 (set out as a note under section 1703 of Title
    12, Banks and Banking) providing that the terms "mobile
    home" and "manufactured home" shall be deemed to
    include the terms "mobile homes" and "manufactured
    homes", respectively.

its sale is governed by the UCC.)(Applying Alaska law.); <u>Henson v. Green Tree Servicing, LLC</u>, 197 N.C.App. 185, 189, 676 S.E.2d 615, 618 (N.C. Ct.App. 2009) (The UCC controls the rights of parties in the sale of a mobile home.)(Applying North Carolina law.); <u>Reno Financial, Ltd. v. Valleroy</u>, 229 S.W.3d 622, 623-24 (Mo. Ct.App. 2007)(A creditor was barred from seeking a deficiency judgment after the sale of a mobile home because it failed to comply with the UCC's collateral disposition provisions.)(Applying Missouri law.); and <u>Supik v. Key Bank of Central New York (In re Brown)</u>, 45 B.R. 766, 768 (Bankr. N.D. N.Y. 1985):

> At the inception, the Court holds the [mobile] Home constitutes personal property which is, therefore, covered by the N.Y.U.C.C. pursuant to § 9-102(1)(a) (McKinney 1977). Both parties apparently admit the U.C.C. covers the instant transaction so the Court will dwell no further on this.

(Applying former New York law.)

Part 6 of Article 9, N.M. Stat. Ann. §§ 55-9-601 <u>et. seq.</u>, deals with "Default." Section 55-9-601 states the general rule that, after default, a secured creditor has all Article 9 Part 6 rights and the rights provided for in any agreement of the parties, subject, however, to limitations set forth in section

55-9-602[16].  That section lists some rights of the debtor and duties of the secured party that cannot be waived or varied.

For example, (a) the debtor may not waive the requirement that the creditor account for and pay surplus proceeds of collateral (N.M. Stat.Ann. § 55-9-602(5) making § 55-9-608(a)[17]

---

[16]Incidentally, "a sale pursuant to an execution [under Part 6 of the UCC] is a foreclosure of the security interest ... by judicial procedure within the meaning of this section."  N.M. Stat. Ann. § 9-601(f).

[17]Section 55-9-608(a) provides:
If a security interest or agricultural lien secures payment or performance of an obligation, the following rules apply:
(1) A secured party shall apply or pay over for application the cash proceeds of collection or enforcement under Section 55-9-607 NMSA 1978 in the following order to:
    (A) the reasonable expenses of collection and enforcement and, to the extent provided for by agreement and not prohibited by law, reasonable attorney fees and legal expenses incurred by the secured party;
    (B) the satisfaction of obligations secured by the security interest or agricultural lien under which the collection or enforcement is made; and
    (C) the satisfaction of obligations secured by any subordinate security interest in or other lien on the collateral subject to the security interest or agricultural lien under which the collection or enforcement is made if the secured party receives an authenticated demand for proceeds before distribution of the proceeds is completed.
(2) If requested by a secured party, a holder of a subordinate security interest or other lien shall furnish reasonable proof of the interest or lien within a reasonable time.  Unless the holder complies, the secured party need not comply with the holder's demand under Subparagraph (C) of Paragraph (1) of Subsection (a) of this section.
(3) A secured party need not apply or pay over for application noncash proceeds of collection and enforcement under Section 55-9-607 NMSA 1978 unless the failure to do so would be commercially unreasonable.  A secured party that
(continued...)

and § 55-9-615(d)[18] unwaivable and unchangeable by agreement);
(b) the debtor may not waive the requirement that the creditor
dispose of collateral in a commercially reasonable manner (N.M.
Stat.Ann. § 55-9-602(7) making § 55-9-610(b)[19] unwaivable and
unchangeable by agreement); (c) the debtor may not waive
notification by the creditor before disposition of the collateral
(N.M. Stat.Ann. § 55-9-602(7) making § 55-9-611[20] unwaivable and

---

[17](...continued)
applies or pays over for application noncash proceeds shall
do so in a commercially reasonable manner.
(4) A secured party shall account to and pay a debtor for
any surplus, and the obligor is liable for any deficiency.

[18]Section 55-9-615(d) provides:
If the security interest under which a disposition is made
secures payment or performance of an obligation, after making the
payments and applications required by Subsection (a) of this
section and permitted by Subsection (c) of this section:

  (1) unless Paragraph (4) of Subsection (a) of this section
  requires the secured party to apply or pay over cash
  proceeds to a consignor, the secured party shall account to
  and pay a debtor for any surplus; and
  (2) the obligor is liable for any deficiency.

[19]Section 55-9-610(b) provides:
Every aspect of a disposition of collateral, including the
method, manner, time, place and other terms, must be commercially
reasonable. If commercially reasonable, a secured party may
dispose of collateral by public or private proceedings, by one or
more contracts, as a unit or in parcels, and at any time and
place and on any terms.


[20]Section 55-9-611 provides, in relevant part:
(a) In this section, "notification date" means the earlier of the
date on which:
  (1) a secured party sends to the debtor and any secondary
  obligor an authenticated notification of disposition; or
                                              (continued...)

unchangeable by agreement); (d) the debtor may not waive certain

contents[21] of the notice of disposition (N.M. Stat.Ann. § 55-9-

602(7) making § 55-9-613(1)[22] and § 55-9-614[23] unwaivable and

---

[20](...continued)
(2) the debtor and any secondary obligor waive the right to
notification.
(b) Except as otherwise provided in Subsection (d) of this
section, a secured party that disposes of collateral under
Section 55-9-610 NMSA 1978 shall send to the persons specified in
Subsection (c) of this section a reasonable authenticated
notification of disposition.
(c) To comply with Subsection (b) of this section, the secured
party shall send an authenticated notification of disposition to:
(1) the debtor;
(2) any secondary obligor; and
(3) if the collateral is other than consumer goods: ...
(d) Subsection (b) of this section does not apply if the
collateral is perishable or threatens to decline speedily in
value or is of a type customarily sold on a recognized market.
(e) ...

[21]Including the following, or a substantially similar,
statement:
You can get the property back at any time before we
sell it by paying us the full amount you owe (not just
the past due payments), including our expenses.  To
learn the exact amount you must pay, call us at
(telephone number).  If you want us to explain to you
in writing how we have figured the amount that you owe
us, you may call us at (telephone number) (or write us
at (secured party's address) ) and request a written
explanation.  (We will charge you $ for the explanation
if we sent you another written explanation of the
amount you owe us within the last six months.)
N.M. Stat.Ann. § 55-9-614(3).

[22]Section 55-9-613(1) provides:
(1) The contents of a notification of disposition are sufficient
if the notification:
(A) describes the debtor and the secured party;
(B) describes the collateral that is the subject of the
intended disposition;
(C) states the method of intended disposition;

(continued...)

Page -23-

[22](...continued)
(D) states that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and
(E) states the time and place of a public disposition or the time after which any other disposition is to be made.

[23]Section 55-9-614 provides, in relevant part:
In a consumer-goods transaction, the following rules apply:
(1) A notification of disposition must provide the following information:
(A) the information specified in Subsection (1) of Section 55-9-613 NMSA 1978;

(B) a description of any liability for a deficiency of the person to which the notification is sent;
(C) a telephone number from which the amount that must be paid to the secured party to redeem the collateral under Section 55-9-623 NMSA 1978 is available; and
(D) a telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available.
(2) A particular phrasing of the notification is not required.
(3) The following form of notification, when completed, provides sufficient information:

(Name and address of secured party)
(Date)
NOTICE OF OUR PLAN TO SELL PROPERTY
(Name and address of any obligor who is also a debtor)
Subject: (Identification of Transaction)
We have your (describe collateral) , because you broke promises in our agreement.

(For a public disposition:)
We will sell (describe collateral) at public sale.
A sale could include a lease or license.  The sale will be held as follows:
Date:
Time:
Place:
You may attend the sale and bring bidders if you want.

(For a private disposition:)
We will sell (describe collateral) at private sale sometime after
(continued...)

unchangeable by agreement); (e) the debtor may not waive an

explanation of any surplus or deficiency claimed by the creditor

(N.M. Stat.Ann. § 55-9-602(9) making § 55-9-616[24] unwaivable and

---

[23](...continued)
(date).  A sale could include a lease or license.

The money that we get from the sale (after paying our costs) will
reduce the amount you owe.  If we get less money than you owe,
you (will or will not, as applicable) still owe us the
difference.  If we get more money than you owe, you will get the
extra money, unless we must pay it to someone else.

[24]Section 55-9-616 provides:
(a) In this section:
    (1) "explanation" means a writing that:
        (A) states the amount of the surplus or deficiency;
        (B) provides an explanation in accordance with
        Subsection (c) of this section of how the secured party
        calculated the surplus or deficiency;
        (C) states, if applicable, that future debits, credits,
        charges, including additional credit service charges or
        interest, rebates and expenses may affect the amount of
        the surplus or deficiency; and
        (D) provides a telephone number or mailing address from
        which additional information concerning the transaction
        is available; and
    (2) "request" means a record:
        (A) authenticated by a debtor or consumer obligor;
        (B) requesting that the recipient provide an
        explanation; and
        (C) sent after disposition of the collateral under
        Section 55-9-610 NMSA 1978.
(b) In a consumer-goods transaction in which the debtor is
entitled to a surplus or a consumer obligor is liable for a
deficiency under Section 55-9-615 NMSA 1978, the secured party
shall:
    (1) send an explanation to the debtor or consumer obligor,
    as applicable, after the disposition and:
        (A) before or when the secured party accounts to the
        debtor and pays any surplus or first makes written
        demand on the consumer obligor after the disposition
        for payment of the deficiency; and
        (B) within fourteen days after receipt of a request; or
                                            (continued...)

Case 11-01163-s   Doc 17   Filed 07/30/12   Entered 07/30/12 09:57:30 Page 25 of 38

    (2) in the case of a consumer obligor who is liable for a
deficiency, within fourteen days after receipt of a request,
send to the consumer obligor a record waiving the secured
party's right to a deficiency.
(c) To comply with Subparagraph (B) of Paragraph (1) of
Subsection (a) of this section, a writing must provide the
following information in the following order:
    (1) the aggregate amount of obligations secured by the
    security interest under which the disposition was made and,
    if the amount reflects a rebate of unearned interest or
    credit service charge, an indication of that fact,
    calculated as of a specified date:

        (A) if the secured party takes or receives possession
        of the collateral after default, not more than
        thirty-five days before the secured party takes or
        receives possession; or
        (B) if the secured party takes or receives possession
        of the collateral before default or does not take
        possession of the collateral, not more than thirty-five
        days before the disposition;
    (2) the amount of proceeds of the disposition;
    (3) the aggregate amount of the obligations after deducting
    the amount of proceeds;
    (4) the amount, in the aggregate or by type, and types of
    expenses, including expenses of retaking, holding, preparing
    for disposition, processing and disposing of the collateral,
    and attorney's [attorney] fees secured by the collateral
    which are known to the secured party and relate to the
    current disposition;
    (5) the amount, in the aggregate or by type, and types of
    credits, including rebates of interest or credit service
    charges, to which the obligor is known to be entitled and
    which are not reflected in the amount in Paragraph (1) of
    this subsection; and
    (6) the amount of the surplus or deficiency.
(d) A particular phrasing of the explanation is not required. An
explanation complying substantially with the requirements of
Subsection (a) of this section is sufficient, even if it includes
minor errors that are not seriously misleading.
(e) A debtor or consumer obligor is entitled without charge to
one response to a request under this section during any six-month
period in which the secured party did not send to the debtor or
consumer obligor an explanation pursuant to Paragraph (1) of
                                              (continued...)

unchangeable by agreement); (f) the debtor may not waive

formalities when the creditor seeks to retain collateral in

satisfaction of some or all of the obligation (N.M. Stat.Ann. §

55-9-602(10) making §§ 55-9-620[25], 55-9-621[26] and 55-9-622[27]

_____

[24](...continued)
Subsection (b) of this section.  The secured party may require
payment of a charge not exceeding twenty-five dollars ($25.00)
for each additional response.

[25]Section 55-9-620 provides:
(a) Except as otherwise provided in Subsection (g) of this
section, a secured party may accept collateral in full or partial
satisfaction of the obligation it secures only if:
    (1) the debtor consents to the acceptance under Subsection
    (c) of this section;
    (2) the secured party does not receive, within the time set
    forth in Subsection (d) of this section, a notification of
    objection to the proposal authenticated by:
        (A) a person to which the secured party was required to
        send a proposal under Section 55-9-621 NMSA 1978; or
        (B) any other person, other than the debtor, holding an
        interest in the collateral subordinate to the security
        interest that is the subject of the proposal;
    (3) the collateral is consumer goods, the collateral is not
    in the possession of the debtor when the debtor consents to
    the acceptance; and
    (4) Subsection (e) of this section does not require the
    secured party to dispose of the collateral or the debtor
    waives the requirement pursuant to Section 55-9-624 NMSA
    1978.
(b) A purported or apparent acceptance of collateral under this
section is ineffective unless:
    (1) the secured party consents to the acceptance in an
    authenticated record or sends a proposal to the debtor; and
    (2) the conditions of Subsection (a) of this section are
    met.
(c) For purposes of this section:
    (1) a debtor consents to an acceptance of collateral in
    partial satisfaction of the obligation it secures only if
    the debtor agrees to the terms of the acceptance in a record
    authenticated after default; and
    (2) a debtor consents to an acceptance of collateral in full
                                              (continued...)

Page  -27-

[25](...continued)
satisfaction of the obligation it secures only if the debtor
agrees to the terms of the acceptance in a record
authenticated after default or the secured party:
    (A) sends to the debtor after default a proposal that
    is unconditional or subject only to a condition that
    collateral not in the possession of the secured party
    be preserved or maintained;
    (B) in the proposal, proposes to accept collateral in
    full satisfaction of the obligation it secures; and
    (C) does not receive a notification of objection
    authenticated by the debtor within twenty days after
    the proposal is sent.
(d) To be effective under Paragraph (2) of Subsection (a) of this
section, a notification of objection must be received by the
secured party:
    (1) in the case of a person to which the proposal was sent
    pursuant to Section 55-9-621 NMSA 1978, within twenty days
    after notification was sent to that person; and
    (2) in other cases:
        A) within twenty days after the last notification was
        sent pursuant to Section 55-9-621 NMSA 1978; or
        (B) if a notification was not sent, before the debtor
        consents to the acceptance under Subsection (c) of this
        section.
(e) A secured party that has taken possession of collateral shall
dispose of the collateral pursuant to Section 55-9-610 NMSA 1978
within the time specified in Subsection (f) of this section if:
    (1) sixty percent of the cash price has been paid in the
    case of a purchase-money security interest in consumer
    goods; or
    (2) sixty percent of the principal amount of the obligation
    secured has been paid in the case of a non-purchase-money
    security interest in consumer goods.
(f) To comply with Subsection (e) of this section, the secured
party shall dispose of the collateral:
    (1) within ninety days after taking possession; or
    (2) within any longer period to which the debtor and all
    secondary obligors have agreed in an agreement to that
    effect entered into and authenticated after default.
(g) In a consumer transaction, a secured party may not accept
collateral in partial satisfaction of the obligation it secures.

[26]Section 55-9-621 provides:
(a) A secured party that desires to accept collateral in full or
(continued...)

unwaivable and unchangeable); and (g) the debtor may not waive

---

[26](...continued)
partial satisfaction of the obligation it secures shall send its proposal to:
> (1) any person from which the secured party has received, before the debtor consented to the acceptance, an authenticated notification of a claim of an interest in the collateral;
> (2) any other secured party or lienholder that, ten days before the debtor consented to the acceptance, held a security interest in or other lien on the collateral perfected by the filing of a financing statement that:
>> (A) identified the collateral;
>> (B) was indexed under the debtor's name as of that date; and
>> (C) was filed in the office or offices in which to file a financing statement against the debtor covering the collateral as of that date; and
> (3) any other secured party that, ten days before the debtor consented to the acceptance, held a security interest in the collateral perfected by compliance with a statute, regulation or treaty described in Subsection (a) of Section 55-9-311 NMSA 1978.
(b) A secured party that desires to accept collateral in partial satisfaction of the obligation it secures shall send its proposal to any secondary obligor in addition to the persons described in Subsection (a) of this section.

[27]Section 55-9-622 provides:
(a) A secured party's acceptance of collateral in full or partial satisfaction of the obligation it secures:
> (1) discharges the obligation to the extent consented to by the debtor;
> (2) transfers to the secured party all of a debtor's rights in the collateral;
> (3) discharges the security interest or agricultural lien that is the subject of the debtor's consent and any subordinate security interest or other subordinate lien; and
> (4) terminates any other subordinate interest.
(b) A subordinate interest is discharged or terminated under Subsection (a) of this section, even if the secured party fails to comply with Chapter 55, Article 9 NMSA 1978.

Page -29-

the right to redeem collateral (N.M. Stat. Ann. § 55-9-602(11)

making § 55-9-624[28] unwaivable and unchangeable.

Part 6 of Article 9 also determines when the rights in

collateral transfer after default.  If the secured creditor

disposes of the collateral, Section 55-9-617(a) applies and

provides:

> (a) A secured party's disposition of collateral after
> default:
>> (1) transfers to a transferee for value all of the
>> debtor's rights in the collateral;
>> (2) discharges the security interest under which
>> the disposition is made; and
>> (3) discharges any subordinate security interest
>> or other subordinate lien.

On the other hand, if the secured creditor accepts the collateral

in full or partial satisfaction, Section 55-9-622(a) applies and

provides:

> (a) A secured party's acceptance of collateral in full
> or partial satisfaction of the obligation it secures:
>> (1) discharges the obligation to the extent
>> consented to by the debtor;
>> (2) transfers to the secured party all of a
>> debtor's rights in the collateral;

---

[28]Section 55-9-624 provides:
(a) A debtor or secondary obligor may waive the right to
notification of disposition of collateral under Section 55-9-611
NMSA 1978 only by an agreement to that effect entered into and
authenticated after default.
(b) A debtor may waive the right to require disposition of
collateral under Subsection (e) of Section 55-9-620 NMSA 1978
only by an agreement to that effect entered into and
authenticated after default.
(c) Except in a consumer-goods transaction, a debtor or secondary
obligor may waive the right to redeem collateral under Section
55-9-623 NMSA 1978 only by an agreement to that effect entered
into and authenticated after default.

Page -30-

> (3) discharges the security interest or
> agricultural lien that is the subject of the
> debtor's consent and any subordinate security
> interest or other subordinate lien; and
> (4) terminates any other subordinate interest.

These sections makes it clear that the ultimate disposition or acceptance[29] of the collateral transfers the debtor's rights; this necessarily means that the debtor retains those rights until the disposition or acceptance occurs.  See Motors Acceptance Corp. v. Rozier, 278 Ga. 52, 53, 597 S.E.2d 367, 368 (2004)(Footnote omitted):

> The UCC's statutory framework makes clear that
> repossession alone is not enough to extinguish the
> debtor's ownership in the collateral, but that a
> creditor must go through additional steps after
> repossession to obtain ownership.  For example, OCGA §§
> 11-9-610 to -614 provide the procedure by which a
> creditor may dispose of collateral after default, and
> OCGA § 11-9-610(c) specifically provides that the
> "secured party may purchase [the] collateral."  The
> creditor would not need to purchase the collateral if
> it already owned it.  Also, OCGA §§ 11-9-620 to -622
> allow a creditor to accept the collateral in full or
> partial satisfaction of the debt with the debtor's
> consent.  These provisions would also be meaningless if
> the creditor already owned the collateral.  "This Court
> is to construe the statute to give sensible and
> intelligent effect to all of its provisions and to
> refrain from any interpretation which renders any part
> of the statute meaningless."

> In this case Plaintiff obtained a judgment but never

actually transferred the collateral.  Therefore, Debtor still had

---

[29]Recall, however, than under Section 55-9-620(a)(3) a creditor may not accept collateral in satisfaction of an obligation when the collateral is consumer goods in the debtor's possession.

all of the non-waivable rights mentioned above. These rights became property of the bankruptcy estate under Section 541 ("The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.") "No court has held that debtors can use the bankruptcy cure provisions to recover property in which they no longer have any interest under state law." <u>Jim Walter Homes, Inc. v. Spears (In re Thompson)</u>, 894 F.2d 1227, 1229 (10th Cir. 1990). But, if a mortgage debtor has some legal or equitable interest in property that enters the bankruptcy estate, the debtor may attempt to retain the property through the bankruptcy cure provisions. <u>Id.</u> (Citations omitted.)

Specifically, a statutory or equitable right of redemption becomes property of the bankruptcy estate. <u>Id.</u> at 1230. This right alone allows a debtor to cure under § 1322(b) until a foreclosure sale. <u>Id.</u> Although Plaintiff obtained a foreclosure judgment, Debtor retained a redemption right which allows her to cure the related obligation in her bankruptcy case. <u>See</u> <u>McCarn v. WYHY Federal Credit Union (In re McCarn)</u>, 218 B.R. 154, 160 (10th Cir. BAP 1998):

> [U]nder section 1322(b), a plan may provide for the cure of defaults, but if the default involves a lien on the debtor's principal residence, under section 1322(c)(1), the cure may only be made prior to the time

that the property is sold at a foreclosure sale
conducted in accordance with applicable nonbankruptcy
law.  The language of section 1322(c)(1) is clear and
unambiguous in establishing the date of the actual
foreclosure sale as the cut-off for curing a mortgage
default under section 1322(b), and supports the
bankruptcy court's conclusion that the debtors had no
right to cure their default to the Credit Union because
their home had been sold at a foreclosure sale prior to
the time that they filed chapter 13. In re Sims, 185
B.R. 853, 864-66 (Bankr. N.D. Ala. 1995) (section
1322(c)(1) clearly and unambiguously sets a bright-line
date, the date of the actual foreclosure sale, as the
cut-off to cure a default under a mortgage)[.]

See also Tidewater Finance Co. v. Moffett (In re Moffett), 356

F.3d 518, 521-22 (4th Cir. 2004):

> [T]he UCC grants certain rights to the debtor upon
> repossession and otherwise imposes duties on a secured
> creditor in possession of collateral.  Most importantly
> for purposes of this case, § 8.9A-623(c)(2) of the UCC
> granted Moffett the right to redeem the vehicle at any
> time before Tidewater Finance disposed of it.  This
> right of redemption was further protected by a duty
> imposed on Tidewater Finance to notify Moffett of any
> planned disposition, at least ten days prior to
> disposing of the vehicle.  See id. §§ 8.9A-611,
> 8.9A-612.  Indeed, Tidewater Finance was even required
> to advise Moffett of her right of redemption.  See id.
> § 8.9A-614.  Moffett was also entitled to any surplus
> amount that the secured creditor made in excess of its
> interest in the collateral.  See id. § 8.9A-615(d).
> Furthermore, the UCC makes clear that Moffett's rights
> of redemption, notification, and surplus-among other
> rights-are not extinguished until Tidewater Finance
> disposes of the repossessed vehicle under § 8.9A-610 or
> itself accepts the collateral under § 8.9A-620 of the
> UCC.  See id. § 8.9A-617.  Since Tidewater Finance has
> not taken any steps to dispose of the vehicle, Moffett
> still possessed these rights when she filed for
> bankruptcy.
>
> These interests, and particularly the statutory
> right of redemption, are unquestionably "legal or
> equitable interests" of Moffett's that are included
> within her bankruptcy estate.  See 11 U.S.C. §

Page -33-

541(a)(1).  As the Supreme Court observed in Whiting Pools, Congress broadly defined the property of the estate in § 541(a)(1) to include all tangible and intangible property interests of the debtor.  See 462 U.S. at 204-05, 103 S.Ct. 2309 and n.9 (quoting legislative history); see also Black's Law Dictionary 1234 (7th ed. 1999) (defining "property of the estate" to include "the debtor's tangible and intangible property interests (including both legal and equitable interests)").  Indeed, the Whiting Pools Court expressly stated that "interests in [repossessed] property that could have been exercised by the debtor-in this case, the rights to notice and the surplus from a tax sale-are already part of the estate by virtue of § 541(a)(1)."  462 U.S. at 207 n. 15, 103 S.Ct. 2309 (internal citation omitted).

Consequently, Moffett's statutory right to redeem the vehicle was properly made part of her bankruptcy estate under 11 U.S.C. § 541(a)(1).  Accord Charles R. Hall Motors, Inc. v. Lewis (In re Lewis), 137 F.3d 1280, 1284 (11th Cir. 1998)(holding that a statutory right of redemption under Alabama's UCC is part of a debtor's bankruptcy estate); see also Bell-Tel Fed. Credit Union v. Kalter (In re Kalter), 292 F.3d 1350, 1355-56 and n. 4 (11th Cir. 2002) (following Lewis when interpreting Florida's UCC).

See also  Capital Realty Services, LLC v Benson (In re Benson), 293 B.R. 234, 239 (Bankr. D. Ariz. 2003)(A debtor's right to cure a default on a principal residence exists at least until completion of the trustee's sale, notwithstanding any state law that might terminate that cure right earlier.)(Construing 11 U.S.C. § 1322(c)(1)).  See also Jim Walter Homes, Inc., 894 F.2d at 1231 (10th Cir. 1990)(If a debtor files a chapter 13 petition before a foreclosure sale, he has a right to cure.)(decided under former section 1322).  Therefore, the Court concludes that under

Page -34-

the New Mexico UCC, the mobile home became property of the
estate.

## THE REPLEVIN STATUTE

The common law remedies of replevin and detinue were
codified in New Mexico in 1847.

> Replevin at common law was maintainable in cases where
> there was an unlawful taking and an unlawful detention
> of personal property.  Detinue at common law was
> maintainable for the recovery of personal property in
> all cases where there was an unlawful detainer,
> regardless of the manner of taking.  In replevin there
> was a seizure under a writ of replevin of the
> subject-matter of the litigation at the beginning of
> the proceeding.  In detinue recovery of the property
> was had only after judgment.  In 1847 the Legislature
> of the then territory passed an act on the subject of
> the recovery of personal property, which has, with some
> slight amendments which are immaterial to this
> consideration, remained the law to this day.  The
> provisions of this act, together with the amendments
> referred to, were re-enacted by chapter 107 of the
> Session Laws of 1907, and now appear as section 4340 et
> seq., Code 1915.  Section 4340 is as follows:
>
> > "Any person having a right to the immediate
> > possession of any goods or chattels, wrongfully
> > taken or wrongfully detained, may bring an action
> > of replevin for the recovery thereof and for
> > damages sustained by reason of the unjust caption
> > or detention thereof."
>
> It is to be observed that this section provides for an
> action in all cases where, under the common law, either
> replevin or detinue might have been maintained.  It
> provides that when goods or chattels have been
> "wrongfully taken or wrongfully detained," the action
> may be brought.  If the conjunction "and" had been
> employed in the statute instead of the disjunctive
> "or," it might well be said that the Legislature
> intended the action provided for to be an action in the
> nature of replevin only.  But having provided that the
> action may be maintained when the goods or chattels are
> wrongfully detained, it is clear that the statute was

Case 11-01163-s    Doc 17    Filed 07/30/12    Entered 07/30/12 09:57:30 Page 35 of 38

designed to cover also cases which, under the common
law, would authorize an action of detinue only.

Troy Laundry Machinery Co. v. Carbon City Laundry Co., 27 N.M.

117, 119-20, 196 P. 745, 746 (1921).

The replevin statutes are currently found in the New Mexico

Statutes at Chapter 42 ("Actions and Proceedings Relating to

Property") in Article 8 ("Replevin").  Current Section 42-8-1 is

identical to Section 4340 of the 1915 code.  Replevin may be used

to recover a mobile home after a default on an installment sales

contract.  Security Pacific Financial Services, a Division of

Bank of America, FSB v. Signfilled Corp., 1998-NMCA-046, 125 N.M.

38, 43, 956 P.2d 837, 842 (Ct.App. 1998).

In the case before the Court, the state court issued a writ

of replevin, which had not been served or returned by the filing

of the bankruptcy.  Under New Mexico law, the writ of replevin is

the equivalent to a summons.  Citizens Bank, Farmington v.

Robinson Bros. Wrecking, 76 N.M. 408, 412, 415 P.2d 538, 540

(1966).

> The jurisdiction of the court, to hear and
> determine actions in replevin instituted pursuant to
> this statute, is dependent upon the issuance and
> service of the writ which brings under the control of
> the court the property for the purpose of rendering a
> judgment in accordance with the object and purpose of
> the statute, viz.: To determine the right to the
> immediate possession of the property, and damages for
> its unlawful caption or detention.

Johnson v. Terry, 48 N.M. 253, 256, 149 P.2d 795, 797 (1944).

See also Novak v. Dow, 82 N.M. 30, 34, 474 P.2d 712, 716 (Ct.App.

1970)(Same.)  Therefore, the mere issuance of the writ by the state court did not divest Debtor's interest in the mobile home under state law.  Therefore, the mobile home is property of the estate.

**CONCLUSION**

In summary, the Court finds that neither collateral estoppel or res judicata apply.  The Bankruptcy Code specifically addresses the issue of the outer limits of home mortgage cure which allows a Debtor a chance to cure until the home is sold. The home was not sold.  To the extent New Mexico state law would be different, it is preempted by the Bankruptcy Code.  The Court will grant Debtor's Motion and deny Plaintiff's Motion and will enter a judgment in favor of Defendant.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

Date entered on docket: July 26, 2012

Copies to:

David McNeill, Jr
HOLT MYNATT MARTINEZ P.C.
PO Box 2699
Las Cruces, NM 88004-2699

Ronald E Holmes
112 Edith Blvd NE
Albuquerque, NM 87102-3524

Kelley L. Skehen
625 Silver Avenue SW

Case 11-01163-s   Doc 17   Filed 07/30/12   Entered 07/30/12 09:57:30 Page 37 of 38

Suite 350
Albuquerque, NM 87102-3111